

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable V. C. Marshall, Chairman
State Soil Conservation Board
Professional Building
Temple, Texas

Dear Sir:

Opinion No. O-1626
Re: Where can elections pro-
vided for in the "State
Soil Conservation Act"
be legally held?

This will acknowledge receipt of your letter
of October 19, requesting an opinion from this depart-
ment and which we quote in part:

"In the Civil Statutes of the State of
Texas on Elections, Article 2936, "Where to
vote" provides: 'All voters shall vote in
the precinct in which they reside.' Example:
The City of Temple, under the law, is ex-
cluded as a part of a proposed Bell county
soil conservation district. The west country
box which is included within the corporate
limits of the City of Temple is the precinct
in which a number of landowners vote who live
outside the incorporation. Evidently the
Board has no authority beyond the boundaries
of a proposed soil conservation district, and
therefore, an election cannot be held within
the corporate limits of the City of Temple.
This would deprive all landowners living out-
side the corporate limits within this precinct
of the privilege of voting.

"The purpose of the law as is written,
and the provisions under which it must be carried
out, seems to be such as places the Board charged

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

Hon. V. C. Marshall, Page 2

with the responsibility of carrying the law
out, in an impossible position. Our question
is: Is it possible for the State Board to
proceed with elections for the creation of
Soil Conservation Districts and meet the re-
quirements of the law as written?"

Construing your question which is in itself very
broad, along with the facts furnished and the Attorney Gen-
eral's Opinions Numbers 0-906, 0-1204, 0-1353 and 0-1495,
we deduce that you want to know whether an election held
as provided in Section 5, subdivisions C, D and E of the
State Soil Conservation Act, H. B. No. 20, 46th Legislature,
will be legal if the "voting box" or "polling place" (where the
votes are cast) is located within the corporate limits of a
city; that is, where the precinct itself embraces territory
in the city limits and territory outside the city limits.

Frequently, the terms "voting box" and "voting
precinct" are used loosely as having the same meaning. We
ascribe to them different meanings. "Voting precinct" has
reference to an area defined as such by the county com-
missioners' court. Articles 2933, 2934, and 2935, R. C. S.
of Texas, 1925. "Voting box" has reference to the place
or location where the election itself is held, the "polling
place". Articles 2931 and 2932, R. C. S. of Texas.

In your letter and example, you refer to the
"Temple west bountry box" as being a place within the cor-
porate limits of Temple where people vote. It is assumed
that you use the word "voting box" in the same sense as
we. Ordinarily, such an arrangement would present no
problem, so long as the location of the "voting box"
was within the boundaries of the precinct. However, it
would present a problem in some cases, as in municipal
elections which has been taken care of by statute. Articles
2931, 2934 and 2951, R. C. S. of Texas 1925. No such ex-
press provisions have been made for the elections inquired
about by you. The pertinent provisions of the Soil Con-
servation Act, supra, hereafter referred to as the Act, are
as follows:

"C. . . To assist the Board in the de-
termination of such administrative practica-
bility and feasibility, it shall be the duty
of the Board, within a reasonable time after
entry of the finding that there is need for

the organization of the proposed district and the determination of the boundaries thereof, to hold an election within the proposed district upon the proposition of the creation of the district, and to cause due notice of such election to be given, which notice shall set forth the boundaries of the proposed district. . . ."

"D. The Board shall pay all expenses for the issuance of such notices and the conduct of such hearings and elections, and shall supervise the conduct of such hearings and elections. It shall issue appropriate regulations governing the conduct of such hearings and elections, and providing for the registration prior to the date of the election of all eligible voters. All such elections held under the provisions of this Act shall be in conformity with the General Election Laws of this State, except as herein otherwise provided, and except that the ballot shall not be numbered or marked for identification purposes.

"E. The Board shall publish the result of such election and shall thereafter consider and determine whether the operation of the district within the defined boundaries is administratively practicable and feasible . . ." (Underscoring ours)

Elections held under the State Soil Conservation Act are "special elections" as contrasted with "general elections", and being such, we look first to the Act and its necessary implications for the procedure to be followed. Wallis v. H. S. Williams, 101 Tex. 395. The Act gives the State Board broad authority with reference to elections provided for therein; it merely directs that they be held in conformity to the General Election Laws. In our opinion, this is merely a general direction to the Board and as to the details of the election such as designating polling places, the discretion is with the State Board. This position is fortified by the fact that there is nothing in the General Election Laws specifically providing that all elections shall be held at the "polling places" or "voting boxes" designated by the County Commissioners' Court; and further, by the fact that there is nothing in

the General Election Laws specifying what person or body shall designate the "polling places", it being merely implied that the person or body in charge of the election shall do so. The Board would have the same authority in this respect as would the Commissioners' Court or City Council, with respect to elections which they "conduct and supervise".

It has been held by this department that under the Act, incorporated cities and towns should not be included in soil conservation districts and that landowners, to be eligible to vote, must reside in the district (which would, of course, mean that they could not vote if residents of an incorporated city or town). Attorney General's Opinion No.0-1353, September 30, 1939. It has also been held by this department that in an election held under the above quoted sections, "voting boxes" or "polling places" shall be provided in each election precinct, previously formed by the Commissioners' Court of the county under authority of Article 2933, supra. Attorney General's Opinion No.0-1495, October 10, 1939. The latter opinion might be construed to mean that the particular "voting boxes" or "polling places" ordinarily used in each election precinct should be used in elections held under the Act. Such construction is not to be placed on that opinion. The writer of that opinion used the words "voting box" intending them to mean "voting precinct", as will be seen from reading them in connection with the question asked and the entire paragraph, of which they are a part.

In your quoted statement, you say, "evidently the Board has no authority beyond the boundaries of a proposed soil conservation district, and therefore an election cannot be held within the corporate limits of the City of Temple". Without commenting on the correctness of your conclusion, one way or the other, since it has been held that the convenience of the voter is to be considered in the holding of elections, Dubose v. Woods, 162 S. W. 3, and since a soil conservation district should not include any part of an incorporated town, you are advised that where a particular voting precinct has within its boundaries some territory which is also within the corporate limits of a city or town, the Board should designate as the "polling place" a place located in that portion of the precinct which lies outside the city or town. However, with respect

to your question, namely, the "legality" of the election, if it were otherwise legal and no one were disfranchised thereby, the results would probably be sustained by the courts, though the "polling place" was not even located within the boundaries of the precinct. Ralls v. Parish, Civ. App., 151 S. W. 1089. As to the legality of the election if held within the precinct and also within the corporate limits of a town, such as Temple, it is our opinion that its legality would likewise be sustained by the courts.

With regard to the selection of "polling places", your attention is respectfully directed to Article 2932, R. C. S. of Texas, 1925, which says that where practicable so to do, all elections shall be held in a public building within the limits of the election precinct where the election is being held. This provision of course is advisory and not mandatory, and, in our opinion, whether or not it were followed would be within the sound discretion of the Board.

Therefore, it is the opinion of this department, and you are so advised, that the answer to your question is that the "voting box" for an election held in connection with the organization of a soil conservation district, when part of the precinct lies within the boundaries of an incorporated city or town, should be located outside the city limits; but, if the election were held at a box located within the city limits and it were otherwise legal and no one were disfranchised thereby, the election could not be successfully attacked in the courts.

Trusting that this satisfactorily answers your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

JN:BT

By

APPROVED NOV 17, 1939
(s)
Gerald C. Mann
ATTORNEY GENERAL OF TEXAS

James Noel
Assistant

APPROVED
opinion committee
By  BWB
chairman